HENRY SZPERA, a/k/a HENRY SZPARA, PETITIONER-RE-
SPONDENT, v. MOHICAN REFINING CORP., RESPON-
DENT-APPELLANT.

ELEANOR SZPARA, PETITIONER-RESPONDENT, v. MOHI-
CAN REFINING CORP., RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1972—Decided December 20, 1972.

570

Before Judges LABRECQUE, KOLOVSKY and MATTHEWS..

Mr. *Gerald W. Conway* argued the cause for appellant (Messrs. *Schreiber, Conway, Reisman & Michals,* attorneys).

Mr. *Thomas E. Weinstock* argued the cause for respondent (Messrs. *Bendit, Weinstock & Sharbaugh,* attorneys).

The opinion of the court was delivered by

LABRECQUE, P. J. A. D. In August 1968 Henry Szpera filed a petition with the Division of Workmen's Compensation for review and modification of a judgment which had been entered in his favor on June 12, 1944. On September 8, 1969, while that proceeding was pending, Szpera died and, thereafter, his widow, Eleanor, filed a dependency petition for death benefits. The petitions were consolidated for trial and awards made in the Division for both revision and lifetime benefits on the petition filed by Szpera, and dependency benefits on the petition filed by his widow. The employer, Mohican, appealed to the County Court which affirmed both judgments. Mohican's appeal to this court challenges only the refusal of the Division and the County Court to give it a credit, pursuant to *N. J. S. A.* 34:15–40, against the award made in response to Szpera's petition for modification of the 1944 judgment, for the amount of a third party recovery in the sum of $18,500 which Szpera obtained during his lifetime as a result of an automobile accident in which he sustained injury to his right leg.

On January 21, 1942 Szpera sustained work connected thermal burns to various parts of his body, including his right leg. A claim petition was filed and judgment was entered in his favor on June 12, 1944 for total permanent disability benefits amounting to 400 weeks of compensation. Sometime thereafter Szpera became sufficiently rehabilitated to be able to work as a self-employed welder and at the expiration of the 400 week period his benefits were reduced to the statutory minimum of $7.50 per week, which Mohican's insurance carrier continued to pay him during his lifetime. In his deposition, which was received in evidence at trial, Szpera testified that although he had suffered burns to 35 to 40% of his body in the 1942 accident, the injury to his right leg was the most serious. After his initial hospitalization and treatment were completed (in 1943 or 1944) he was not treated by any doctor until February 1966. During this 22 year period, however, his right leg never healed but he continued to suffer periodic breakdowns of the scar tissue involving swelling and ulceration of the leg. During this period he treated his leg himself with ointment and bandages. This condition continued until February 8, 1966, when his truck was struck and jolted by another vehicle as he was attempting to enter it. He fell to the ground, scraping his right leg, including that portion which had been injured in the 1942 accident, in the process.

Following the 1966 accident the condition of decedent's leg worsened, and the swelling and ulceration which developed caused him to seek medical aid. On April 10, 1966 he was hospitalized and underwent surgery to the right leg. In December 1966, upon the surgical excision of an ulcer and the insertion of a skin graft, a laboratory examination disclosed the presence of cancer cells. Decedent's condition was diagnosed as a Marjolin ulcer, a cancerous growth (epidermoid carcinoma) known to develop in the scars of burned areas in the skin after chronic irritation or breakdowns. The cancer continued to spread, notwith-

standing further surgery on April 29, 1967, May 17, 1967 and in March, 1969. He died six months later.

At the trial in the Division, Dr. Meijer, who performed the 1966 operations, testified that there was causal relationship between the development of the Marjolin ulcer and the original 1942 burns. He was of the belief that the Marjolin ulcer in all probability was already present in its early stages at the time of the accident, and while he could not exclude the 1966 accident from playing some part in the acceleration or exacerbation of what he felt was a cancerous condition, he was of the opinion that even without the 1966 accident the cancer would have developed—probably one or two or three years later. In his opinion, if decedent had not developed the old burn scars from his 1942 injuries, cancer would not have developed from the 1966 accident.

Dr. Hudock, a cancer specialist who operated on decedent in April and May 1967, was of the opinion that without the existence of the original burns the cancer would never have developed. While he could not specifically state that the cancer existed prior to February 1966, he believed that it existed to some degree and that the trauma suffered in the accident aggravated and exacerbated it.

Dr. Carter, who performed extensive surgery on decedent in 1969, testified that there was direct causal relationship between the 1942 injury and the cancer, and that the repeated breakdowns in the burned area were "infinitely more significant" in causing the condition than was the 1966 accident. He opined that the 1966 accident played a "very secondary and irrelevant part" in the development of the skin cancer.

Respondent's expert, Dr. Lewis, testified, in response to a hypothetical question, that the cancer was caused by a combination of the earlier burn injuries and the trauma suffered in the 1966 accident. In his view it was improbable that the cancer existed prior to February 1966, although he con-

ceded that decedent was more prone to the development of malignancy at that time because of his underlying burns.

The judge of the County Court found (as did the judge of Compensation) that Szpera's 1942 burns were the cause of the development of the cancerous condition in 1966. He did not entirely exclude the 1966 accident but found that it was, at most, "really a superimposed accident, and, of itself, questionable *as to the degree* it effected [sic] the preexisting condition." (Emphasis added.) He agreed with the Division's finding which held Mohican responsible for 95% of the cost of the extensive medical and hospital treatment which followed the 1966 accident. He found that decedent's action against the party allegedly responsible for the 1966 accident had resulted in a recovery of $18,500 but that Mohican was not entitled to a credit for any part of that sum.

As noted, Mohican challenges only the denial of its asserted right to reimbursement pursuant to *N. J. S. A.* 34:15–40. The pertinent part of that statute provides as follows:

Where a third person is liable to the employee or his dependents for an injury * * *, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee * * *, nor be regarded as establishing a measure of damage therein. In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, *any sum* in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided. (Emphasis added.)

* * *

(b) If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents *less employee's expenses of suit and attorney's fee as hereinafter defined.* (Emphasis added.)

The judge of the County Court concluded that Mohican was entitled to credit under the statute "only where a successful action results in a third party recovery or a third party settlement *for the same compensable injury*." (Emphasis added.) He noted that there was no language in the statute which implied entitlement for any injury which might be proximately related, aggravated, or superimposed on the compensable injury.

In holding that the statute permitted credit only where the third party recovery or settlement was for the same compensable injury the judge of the County Court appears to have relied principally upon *Schmidt v. Revolvator Company*, 46 *N. J. Super*. 232 (Cty. Ct. 1957). In that case, however, reimbursement was sought out of monies received in settlement of a suit for damages arising out of a malpractice claim against a physician for his negligent treatment of a compensable injury, and the recovery for medical malpractice was for an injury subsequent to and independent of the injury for which compensation was awarded. See *Bello v. Comm'r of Dept. of Labor and Industry*, 56 *N. J.* 41, 47 (1970).

Here the 1966 injury to decedent involved the same leg injured in the 1942 accident, and the symptoms were generally in the same area and of the same character. Actually, while the County Court Judge appears to have been unable to arrive at a determination as to the *extent* to which decedent's previous condition was aggravated in 1966, so far as the record before us reveals, the only injuries for which the settlement of $18,500 was made were to the right leg— in the form of hematoma, swelling, ulceration and precipitation, aggravation and exacerbation of cancer. He himself testified he suffered no other injuries "that amounted to anything outside of a shakeup."

While neither side has cited a case in which our courts have dealt directly with the issue presented, we believe that the rationale expressed by our Supreme Court in the cited case of *Bello v. Comm'r of Dept. of Labor and Industry,*

*supra,* is applicable and controlling. In that case the injured workman petitioned for workmen's compensation benefits for disability caused by toxic encepholopathy, resulting from his work connected exposure to deleterious gases. Prior to his employment he had been under some disability by reason of a number of non-compensable preexisting pathological conditions, including a respiratory one and some cardiovascular disability. At the trial he was found to be totally and permanently disabled, the court finding that 25% of his disability was attributable to his preexisting condition and 75% to his work connected condition. The issue before the court was whether the Two Per Cent Fund (Fund) (*N. J. S. A.* 34:15–95.1) was entitled to credit out of a third party recovery of $30,000, to the extent of the benefits allowed Bello, for 25% of his disability, from the Fund. It was there urged, in effect, that if there could have been no recovery in the third party suit for the injuries for which the Fund — as distinguished from the employer — was being held liable, the Fund was not entitled to reimbursement for such injuries. The court, after discussing *Schmidt v. Revolvator* and a number of other apparently similar holdings, held:

> In none of these cases was the holding of the court bottomed upon the thesis that an employer's right to reimbursement was limited to the extent that the injury or damage for which he is liable under the Compensation Act, is identical with the injury or damage for which a third-party tort-feasor is liable to the employee. To the contrary, reimbursement for compensation payments has been continuously allowed by the Department of Labor and Industry out of the entire third-party judgment or settlement without such a limitation. This construction of the statute by the department is entitled to great weight. (cites omitted) (at 48)

And further:

> The prevailing rule in the United States "refuses to place an employee's third-party recovery outside the reach of the employer's lien on the ground that some or all of it was accounted for by damages for pain and suffering." (2 *Larson, Workmen's Compensation Law* § 74.35 (1969). See *Bumbarger v. Bumbarger,* 190 *Pa. Super.* 571, 155 *A.* 2d 216 (Sup. Ct. Pa. 1959).

Therefore it must be concluded that employer and insurer reimbursement and credit under N. J. S. A. 34:15-40 is not limited to the compensable items for which there was also a third-party recovery. It is based on the total amount of the third-party recovery regardless of the component elements. See *United States v. Hayes*, 254 *F. Supp.* 849 (W. D. Ky. 1966); *Cole v. Morris*, 409 *S. W.* 2d 668 (Mo. 1966). The Fund should be similarly entitled to reimbursement and credit. (at 50 and 51)

We hold that Mohican should have been allowed reimbursement, and so much of the judgment below as denies reimbursement must be set aside. We are convinced that it was the legislative intention in enacting N. J. S. A. 34:15-40 that payments by way of benefits under the Workmen's Compensation Act be subject to credit or reimbursement in the event of a recovery by the employee against a third-party tortfeasor based upon the total amount thereof. This is so even though the third-party recovery may include items, such as pain and suffering, which are not compensable under the Workmen's Compensation Act. Where, as here, the recovery against a third party involves a claim for aggravation of a previous, compensable condition, the employer paying compensation for the total effect of the aggravation upon the pre-existing condition is entitled to reimbursement from the third-party recovery to the extent of the amount thereof less the employee's expenses of suit and attorney's fees as defined in N. J. S. A. 34:15-40 (b), (d). *Bello, supra*, at 50-51.

The judgment of the County Court is modified accordingly and, as modified, the matter is remanded for further proceedings in conformity with this opinion.