STATE OF MISSOURI, EX REL. OTIS ELEVATOR COMPANY, a Corporation, v. FORREST SMITH as State Auditor of the State of Missouri, Appellant.—No. 40027.—212 S. W. (2d) 580.

Court en Banc, May 27, 1948.

Rehearing Denied, June 14, 1948.

*J. E. Taylor,* Attorney General, and *Tyre W. Burton,* Assistant Attorney General, for appellant.

*Shepley, Kroeger, Fisse & Ingamells, McKnight, McLaughlin & Dunn, Frank H. Fisse* and *T. I. McKnight* for respondent.

[580] ELLISON, J.—This is a certiorari proceeding brought by the relator Otis Elevator Company, against the State Auditor in the circuit court of the City of St. Louis under Sec. 11445,[1] to review the Auditor's finding and assessment of 2% State sales tax under Sec's

[1]All references to our statutes are to Laws Mo. 1943, p. 1012 et seq., unless otherwise indicated. Italics in quotations are ours unless otherwise shown.

11407(b) (g) and 11408 [with penalty and interest], on intrastate retail sales of tangible personal property made by relator to various purchasers for use or consumption and not for resale, during the period between October 1, 1940 and April 30, 1943. The amount in dispute is $8519.83. The circuit court quashed the Auditor's finding and assessment and he has appealed. An opinion was written in Division 2 reversing that judgment in part and affirming it in part. On the court's own motion the cause was transferred to the court en banc, where it was reargued and the opinion was again adopted, two judges dissenting and one dissenting in part. The respondent Elevator Company has filed a motion for rehearing en banc asking for a clarification of the opinion without reargument. To save duplication in the discussion of the facts and law our original opinion is withdrawn and this opinion substituted.

The facts are practically undisputed. The respondent Elevator Company is engaged in the business of designing, constructing, [581] installing and repairing elevators in buildings under three classes of contracts: (1) those with original contractors or building owners, providing for the furnishing and erection complete of new elevators in buildings, including the engineering skill, labor and materials required; (2) similar contracts for the reconstruction of, or major repairs upon, existing elevators in buildings; (3) oral contracts on open order, covering minor repairs on elevators and the furnishing of small parts as necessary.

As to the class 1 and class 2 contracts, the controverted sales tax was levied only on the materials furnished. They are in writing and call for a lump sum consideration for the whole job—covering all profits, services and materials furnished. They also contain a clause retaining respondent's title to the materials furnished until the contract price is paid in full. This clause provides in part: "It is agreed that all apparatus furnished hereunder can be removed without material injury to the freehold." The elevators thus constructed under the class 1 and class 2 contracts are made to order, so to speak, and will not fit any elevator shaft other than the one for which they were designed.

The State Auditor assessed the sales tax on 70% of the lump sum consideration received by respondent on each class 1 and class 2 contract during the period covered, this because the evidence showing that percentage represented the price of the materials furnished under those contracts, the remaining 30% covering the labor, services and profits. As to the class 3 contracts, for small repairs on elevators, the Auditor conceded that under Rule 18 of the Rules and Regulations of his Department if the Elevator Company in making such repairs had segregated the labor costs from the charges for material used, the sales tax would have been levied on the materials alone. But inasmuch as the respondent Elevator Company stated at the

administrative hearing on the assessment that if it was liable for any tax it was liable for both labor and materials, the tax was assessed on the whole contract price under the class 3 contracts.

The Elevator Company denies liability for the taxes altogether, relying on City of St. Louis v. Smith, 342 Mo. 317, 320-2, 114 S. W. (2d) 1017, 1019-20. That was a suit for a declaratory judgment brought by the city against the State Auditor. Its purpose was to obtain an adjudication whether the city was liable for sales tax on the tangible personal property purchased and used by contractors in the construction of a street paving, a sewer and a hospital for the city, where the price to be paid by the city in each instance was fixed by the construction contract at a lump sum for the completed project —as here.

The decision held the city was not required to pay the sales tax on the materials, on this reasoning. (1) The contractor had agreed to furnish all labor and materials necessary to construct, complete and deliver each project to the city for a fixed sum of money. (2) It was necessary for him to purchase and use the required materials in performing his contract. (3) It was "the inseparable commingling of labor and material that produced the finished project," which became and was a new and separate entity. (4) Hence it could not be said the contractor sold the *materials* to the city as consumer, or that he purchased them for that purpose. (5) On the contrary, he used and consumed them in furnishing each completed project to the city. (6) Consequently the contractor, and not the city, was liable for the sales tax on the materials, under Sec. 11412. The case did not expressly decide whether the city could be liable for sales tax on the *completed* projects, as distinguished from the materials entering into their construction. But it did cite 23 R. C. L., p. 1233, sec. 49 on the proposition that a contract to furnish labor and material for an improvement to be attached to real estate as a part of a building in course of construction, is not a sale of goods or chattels.

Following the pattern of the Smith decision, supra, the trial court found, and the respondent Elevator Company contends here, that it is not liable for the sales tax on the materials used in the construction and repairing of elevators under its class 1 and class 2 contracts because: it did not sell those materials to the owner of the building; but on the contrary "used and consumed" them [within the meaning of Sec. 11407g, supra] in constructing the elevators, which automatically became a part of the building. In other words, the materials lost their character or status as "tangible personal property" [within the meaning of [582] Sec. 11407g, supra] and became a part of the *real estate* coincidently with their delivery and attachment to the building, in consequence of which they were not subject to sales tax.

The appellant Auditor's first answering contention likens the Elevator Company's business to that of a merchant or dealer who sells furnaces, heating systems, air conditioning or refrigerating systems, and agrees to install them in buildings. He cites Commonwealth v. Pa. Heat & Pr. Co., 333 Pa. 46, 3 Atl. (2d) 412. We think that case does not sustain him. There the tax involved was a "mercantile license tax." And the defendant was a "dealer" who was engaged chiefly in the business of purchasing "specific articles", to wit, oil burners and their parts and accessories, and then reselling and installing them in furnaces or in buildings. The dealer was held liable for the tax, and the opinion pointed out the difference between such a business and that of artisan or craftsman, who merely contracts to furnish the labor and materials for the construction, alteration or repair of a structure, but does not exhibit, sell and install it as a merchant might do. The Elevator Company here is more like these artisans. It does not pre-build standardized elevators or sell them, from a stock of merchandise, but designs, constructs or reconstructs and installs each one in a particular building.

The Auditor's second and main contention in effect concedes the Elevator Company would not be liable for sales tax under its class 1 and class 2 contracts, in the absence of the title retaining clause therein. But he maintains that clause prevented the materials used in the elevator construction work from losing their character as tangible personal property and metamorphosing into realty upon attachment thereto. As will be remembered the clause not only provided that the Elevator Company retained title to the materials until the lump sum consideration had been paid in full, but also stipulated all the apparatus furnished could be removed without material injury to the freehold. On the foregoing question the Auditor cites an encyclopaedic text and five decisions.[2] These authorities discuss the binding effect of such title retention contracts, and hold they are valid and inure to the benefit of third parties, unless as a matter of actual fact the materials have been so inseparably merged into the building that their removal would substantially injure it or destroy the value of the materials. Of the decisions cited the Wheat, Woodliff and Harvard cases involved the removal of elevators from buildings.

In applying that rule to the facts here the Auditor starts with the premise that the taxable event under the Missouri Sales Tax Act is the passage of title to the tangible property sold, which of course

[2] 36 C. J. S., p. 889, sec. 1; p. 894, sec. 2; p. 917, secs. 12, 13; p. 1007, sec. 63, note 54; General Motors Acceptance Corp. v. F. & H. Savings & Loan Ass'n, 227 Mo. App. 832, 838-9, 58 S. W. (2d) 338, 341-2; Wheat v. Otis Elevator Co. (5th Cir.), 23 Fed. (2d) 152, 153; Woodliff v. Citizens' Bldg. & Realty Co., 240 Mich. 413, 416, 215 N. W. 343, 344; Harvard Financial Corp. v. Greenblatt Construction Co., 261 N. Y. 169, 172, 184 N. E. 748, 749; Detroit Steel Cooperage Co. v. Sisterville Brewing Co., 233 U. S. 712, 58 L. Ed. 1166, 34 S. Ct. 753.

is true. Thence he argues that under the title retention clauses in the class 1 and class 2 contracts the title to the elevator materials did not pass to the building owners until the stipulated price for the whole project was paid, which necessarily was *after* the whole project had been completed. And he avers that excluded the Elevator Company from the protection of the Smith case, supra, because the plain implications of that decision are that the title to the materials must pass to the building owner not after but *while* the project is in course of construction, since otherwise the contractor could not be the "user and consumer" thereof, as the Smith case requires.

We are unable to follow the latter part of this reasoning. If the materials have [583] the legal status of tangible personal property when the title passes, they are subject to sales tax. On the other hand, if by the act of attaching them to the real estate they are converted into realty and the title passes to the landowner they will not be subject to the tax because it does not go against real estate. But even though the materials be attached to the real estate and in that sense be "used and consumed", yet if the parties by their contract have preserved the legal status of the materials as personalty under the rule stated in the authorities cited supra in marginal note 2, then they are subject to the tax, notwithstanding the Elevator Company retained a conditional title until the contract price had been paid in full. The express provisions of Sec. 11407(b) make sales under conditional sale contracts subject to sales tax. In short, we agree with the Auditor's conclusion but not in his reasoning.

The relator Elevator Company answers that its title under the title retention clause in its class 1 and class 2 contracts is only a "security" title in the nature of a specific *lien* upon the materials furnished for the completed structure; and that the title to the materials, subject to that lien, passes to the landowners as realty when they are installed. Its brief cites several decisions holding that such a "security" title is not inconsistent with the retention of a statutory mechanic's lien by a contractor;[3] and others holding that a conditional sales vendor under Sec's 3515, 3516, R. S. 1939-Mo. R. S. A. may at his option proceed as a *lien* holder,[4] and not a title holder. But the case stressed by relator is Municipal Acceptance Corporation v. Canole, 342 Mo. 1170, 1178-9 (2, 3), 119 S. W. (2d) 820, 824-5 (5, 6, 7), which held that the purchaser in

[3]Hooven, O. & R. Co. v. John Featherstone's Sons (8th Cir.), 111 Fed. 81, 95 (17); Otis Elevator Co. v. Stafford, 95 N. J. L. 79, 82(4), 111 Atl. 695, 696(4); Otis Elevator Co. v. Finks Clo. Co., 131 Me. 95, 99(3), 159 Atl. 563, 565 (6, 7); Annotation, 58 A. L. R., p. 1122.

[4]White v. Karl Kiefer Machine Co. (8th Cir.) 127 Fed. (2d) 119, 120(1); Keystone Press v. Bovard, 236 Mo. App. 156, 159(2), 153 S. W. (2d) 130, 131(2); General Excavator Co. v. Emory (Mo. App.), 40 S. W. (2d) 490, 492(2, 3), and cases there cited.

possession under a conditional sale contract was the party liable for the taxes on the property sold,

However, the Municipal Acceptance case involved *ad valorem* taxes on electrical machinery sold on conditional sale contract for a municipal light plant. The machinery had been installed, the contract completed and the city was operating it. The city was held liable for the taxes on the ground that the tax liability followed the beneficial ownership and use, notwithstanding the conditional sale contract was still outstanding because of unpaid installments of the purchase price. The respondent Elevator Company maintains this decision is in point on the theory that the title to the elevator materials vested in the building owner as *realty*, as soon as they were attached, subject to a lien or "security" title retained by it. And it is true that the status of the materials was somewhat dual in nature, since our decisions[4] have held the vendor in a conditional sales contract may elect to treat such materials as part of the land and enforce a mechanic's lien thereagainst.

But we disagree with respondent for three reasons. First, the taxes in the Municipal Acceptance case were ad valorem taxes on the property, itself; whereas here the tax is on a *transaction*, a sale, which Sec. 11407(b) expressly makes taxable although it be conditional. Second, the statute for its purposes necessarily gives the materials the status of personalty. Furthermore the class 1 and class 2 contracts also give the, materials that same status, because both "retain" the title to the materials and provide they may be removed without substantial damage to the freehold. And the only title. in the materials which the respondent Elevator Company ever had to be "retained" was as personalty. Thirdly, the intention of the class 1 and class 2 contracts is further shown by the fact that they are frequently made by the Elevator Company, as subcontractor, not with the building owners but with the original contractor for the building who would have. no title interest in the land except a mechanic's lien. Sec. 3546 et seq.

[584] We hold the Elevator Company is liable for sales tax on the materials furnished under its class 1 and class 2 contracts because of the title retention clause therein. Otherwise, it would not be liable, since the contracts would be pure real estate construction contracts, as in the Smith case, supra. In this connection attention should be called to the fact that the authorities in other states are pretty much divided on whether the doctrine followed in the Smith case is correct.[5]

Turning now to the class 3 contracts, which are oral, on open order, and cover minor repairs on elevators, and the furnishing of

---

[5]Annotations: 47 Am. Jur., p. 236, sec. 28; 163 A. L. R., pp. 276, 281-285; 139 A. L. R., pp. 382-4; 115 A. L. R., p. 491-2; 111 A. L. R., p. 945; 98 A. L. R., p. 837.

small parts, as necessary. These contracts do not contain a title retention, or conditional sale, clause—as is obvious since conditional sale contracts must be in writing executed, acknowledged and recorded like chattel mortgages. Sec. 3515. The repair work is done and the small parts are furnished and become a part of the elevators, which, in turn are a part of the building and real estate.

Under these class 3 contracts, as in the class 1 and class 2 contracts, skilled services are rendered in connection with the furnishing of materials, but the latter is a minor part of the undertaking. In some decisions such contracts are treated as being essentially for the rendition of personal services, rather than for the sale of tangible personal property, and no sales tax is allowed. 47 Am. Jur., p. 231, sec. 26; 139 A. L. R., p. 381. But it is unnecessary to inquire whether that rule would apply here, for in any event the materials would be attached to and become a part of the real estate, and they are not furnished under a conditional sale contract. Hence, to be consistent with the Smith case supra, and our holding on the class 1 and class 2 contracts [in the absence of a conditional sale contract] we must and do hold the materials furnished under the class 3 contracts are not subject to sales tax.

For the reasons stated the judgment of the circuit court is affirmed in the quashal of the appellant Auditor's assessment of sales tax on the respondent Elevator Company's class 3 contract sales in the sum of $2571.44; and reversed and remanded, as to the quashal of the assessments on sales under the class 1 and class 2 contracts, with directions to enter judgment thereon against respondent for $5947.29. All concur.