Sylvester COLE, Respondent,

v.

M. E. MORRIS, Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Appellant.

No. 51832.

Supreme Court of Missouri, Division No. 1.

Dec. 30, 1966.

Max M. Librach, St. Louis, for respondent.

Norman H. Anderson, Atty. Gen., Jefferson City, Irving L. Cooper, Special Asst. Atty. Gen., Clayton, for appellant.

HENLEY, Judge.

This is an appeal by the Treasurer of the State of Missouri, custodian of the Second Injury Fund, from a judgment of the circuit court of the City of St. Louis sustaining an award of The Industrial Commission of Missouri.

■ This court has jurisdiction for the reason that a state officer as such is a party. Article V, § 3, Constitution of Missouri, V.A.M.S.; Stewart v. Johnson, Mo., 398 S.W.2d 850 [1]; Grant v. Neal, Mo., 381 S.W.2d 838 [3].

Respondent was employed by the General Tire Company as a truck driver. On the morning of January 6, 1961, while making a service call in his employer's behalf, he was involved in a collision between his employer's truck being operated by him and a truck of Armour Packing Company. As a result of the collision he sustained an injury to his back. His claim for workmen's compensation against his employer and its insurer was compromised and settled, leaving pending his claim against the Second Injury Fund; consequently, we are concerned only with his claim against the Fund. While the claim was pending before the Referee, respondent settled his separate action for damages against the third party tort-feasor, Armour Packing Company, for $18,600. His total expense in recovering that sum from Armour was $6,341.50, leaving a net recovery of $12,258.50.

As a part of its final award to respondent on his claim against the Fund, the Commission made additional findings of fact and conclusions of law: (1) that as a direct result of the accident respondent sustained a 40% permanent partial disability of the body as a whole; (2) that prior to the accident respondent had an existing permanent partial disability equal to 30% of the body as a whole; and (3) that the previous disability and the disability from the last injury combined resulted in permanent total disability. The final award was that appellant pay respondent 140 weeks of compensation at the rate of $40 per week beginning February 4, 1964, and thereafter a pension of $27.50 per week for life.

Appellant contended before the Commission that the Second Injury Fund was entitled to be subrogated to the rights of respondent against the third party tort-feasor and credit on the award against the Fund of the amount respondent recovered from the third party. This contention, denied by the Commission and the denial sustained by the circuit court, constitutes appellant's first point relied on as error.

This precise question has not been ruled by an appellate court of this state. The authorities cited by appellant and respondent are, for the most part, far afield of and shed little light on the question for decision; the briefs are of little or no help to us. The decisions we find in other jurisdictions are not in agreement; however the weight of authority and the better reasoned opinions lead toward a conclusion that the Fund is entitled to subrogation.

Respondent contends that the Fund is not entitled to credit on the award against it, because the statutes (§§ 287.150 and 287.220 RSMo 1959, V.A.M.S.) do not give the Fund the right of subrogation; that § 287.-220, providing for payments from the Fund, and other sections in chapter 287, creating the Fund, do not authorize credit to the Fund of any amount recovered by an employee from a third party tort-feasor. There is no specific mention of a right of subrogation to the Fund in those sections. Nor does § 287.150, providing for subrogation of the employer to the rights of the employee against third party tort-feasors, authorize subrogation of the Fund to rights of the employee against third parties except for rehabilitation benefits paid the employee pursuant to subsection 3 of § 287.-141.

If we are confined to the subrogation section of the statutes (§ 287.150) for authority for crediting the Fund with the amount recovered by respondent from the third party, then obviously the Fund is not en-

titled to the credit claimed by appellant. But, are we confined to the statute? We think not.

■ "Subrogation is founded on principles of justice and equity, and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form." 83 C.J.S. Subrogation pp. 579–580, § 2 a. It is "* * * closely akin to, if not a part of, the equitable principle of 'restitution' and 'unjust enrichment.' It is in the nature of a constructive trust, of equitable origin, to serve best the justice of the situation * * *." 83 C.J.S. p. 581, § 2 b. It has been said that "* * * the right of subrogation * * * is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by the one who in fairness and good conscience ought to pay it. Though the doctrine is equitable in its origin, the right acquired is generally referred to as legal subrogation; * * *" McKenzie v. Missouri Stables, Inc., 225 Mo.App. 64, 34 S.W.2d 136, 138 [2]. "Legal subrogation has its rise in equity, and arises out of a condition or relationship by operation of law. So it has been held that legal subrogation arises by operation of law where a person having a liability * * * in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditors whom he has paid." 83 C.J.S. Subrogation pp. 583, 584, § 3 a.

■ As a general rule, any person who, pursuant to a legal obligation to do so, has paid for an injury resulting from the wrong of another may be subrogated to the rights of the injured person against the wrongdoer. Before the effective date of The Workmen's Compensation Law this court recognized and applied the above rule in an action by an employer to recover from a third party for amount employer paid its injured employee as damages on account of negligence of the third party. Busch & Latta Painting Co. v. Woermann Const. Co., 310 Mo. 419, 276 S.W. 614, 619 [7, 8], and cases there cited.

In Geneva Construction Company v. Martin Transfer and Storage Company, 4 Ill. 2d 273, 122 N.E.2d 540, the Supreme Court of Illinois held that where the statutory provision for subrogation of the employer to rights of the employee against third parties had been declared unconstitutional, the employer was entitled to recover compensation paid his injured employee under the doctrine of common law subrogation. In Fidelity & Casualty Co. of New York v. St. Paul Gas Light Co., 152 Minn. 197, 188 N.W. 265, the Supreme Court of Minnesota held that provisions in its compensation act for subrogation were "* * * merely declaratory of the common-law rule of subrogation, available * * * without act of the Legislature." In Hardware Mutual Casualty Co. v. Butler et al., 116 Mont. 73, 148 P.2d 563, 568 [6], the Supreme Court of Montana held: "Independent of any provision of the Workmen's Compensation Act, the employer or the insurance carrier paying compensation would have the right to be subrogated to the claim of the injured workman as against a third party whose negligence was responsible for the injuries sustained by the workman."

Other than provide two methods of apportionment of a recovery from a third party tort-feasor between the employer and employee, the legislature, in enacting § 287.-150, did no more than declare the law, that is, a right of subrogation, as it existed before enactment of The Workmen's Compensation Law; no new right was created.

■■ The employer's right of subrogation to tort claims in favor of his injured employee against third persons, as it existed before enactment of The Workmen's Compensation Law, and as it exists today, is based on the employer's legal obligation to pay compensation for the injury. On the same basis, there is no logical reason why another, under the same obligation to pay

compensation for injury caused by the negligence of a third party, should not be accorded the same right. The right of subrogation existed in such persons under the common law before enactment of what is now chapter 287, RSMo 1959, V.A.M.S., and exists today without enactment of statutory authority. The essential elements of the common law right of subrogation are present and involved, and should be applied.

The Second Injury Fund has been required to pay compensation under the terms of the statute to an employee injured by a third party tort-feasor and that loss should fall ultimately upon the wrongdoer responsible for it. If the Fund is deprived of the right of subrogation, it would result in the unjust enrichment of the employee, who could retain both compensation and damages, thereby violating a basic tenet of the common law that there may not be a double satisfaction for the same wrong.

We hold that the Second Injury Fund is subrogated to the rights of the employee and entitled to credit on the award of a portion of the recovery by the employee from the third party. Having so held, the only question remaining on this point is what portion of the recovery shall be paid and credited to the Fund.

We hold that the amount of the recovery remaining, after payment of respondent's expenses of making the recovery, shall be paid, retained and credited as follows: the respondent shall forthwith pay or reimburse the Fund for all compensation paid him by the Fund; the balance shall be retained by respondent and be treated as an advance payment by the Fund on account of any future installments of compensation.

■ Appellant's second numbered point relied on is: "There was not sufficient evidence to warrant the award against the * * * Fund, because the evidence clearly showed that the last injury alone caused Respondent to be permanently and totally disabled, and that there was no causal connection between Respondent's pre-existing injuries and the injuries of January 6, 1961. To permit Respondent to recover against the Second Injury Fund would permit him to receive an unjust enrichment." Actually, there are three parts to this second and last point: (1) insufficient evidence to support the award, (2) no causal connection between the preexisting and last injury, and (3) unjust enrichment. The point and its parts are not supported by the citation of authority. Part (2) is not mentioned in the argument; part (3) is mentioned but not developed in the argument. By failing to cite authorities and develop these two parts of the point in his argument appellant has abandoned them. They will not be further noticed. Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564, 565 [1]; Wattson v. James B. Welsh Realty & Loan Co., Mo.App., 266 S.W.2d 35, 37 [2]; Kratzer v. King, Mo., 401 S.W. 2d 405, 408 [5].

■ Part (1) of the point is frugally developed in argument. The question of whether there was " * * * sufficient evidence to warrant the award * * * " resolves itself into which of two conflicting medical opinions regarding the cause of respondent's permanent total disability should be accepted. Both Dr. Funsch, who testified on behalf of respondent, and Dr. Diehr, who testified on behalf of appellant, concluded that respondent was permanently and totally disabled. Dr. Funsch testified that the permanent total disability was the result of a combination of a preexisting injury and disability and the last injury. Dr. Diehr testified that the permanent total disability was the result of the last injury alone. As indicated, the Commission accepted the opinion of Dr. Funsch on this issue. Such issue is peculiarly for the determination of the Commission, Vollmar v. Board of Jewish Education, Mo., 287 S.W.2d 868, 872 [4]; and the award may not be said to be without substantial evidence to support it. Williams v. International Shoe Co., Mo. App., 213 S.W.2d 657, 662 [6]. This part of appellant's second point relied on is without merit.

The judgment is reversed and the cause remanded to the circuit court with directions that that court return the cause to the Commission for entry of its order in accordance with this opinion.

All concur.