**Roger W. MARSH, d/b/a Bestmade Wood Products, Appellant,**

v.

**James R. SPRADLING, Director, Department of Revenue, Respondent.**

No. 59302.

Supreme Court of Missouri, Division No. 2.

June 14, 1976.

Robert E. Harris, Warrensburg, for appellant.

John C. Danforth, Atty. Gen., Douglas Mooney, Asst. Atty. Gen., Jefferson City, for respondent.

HENRY I. EAGER, Special Commissioner.

This is an appeal from a judgment affirming, on review, an assessment of sales taxes under Section 144.020, RSMo 1969, V.A.M.S.[1] The amount so assessed with interest and penalties was $3,956.04, and it covered sales for the period from April 1, 1969, to March 31, 1974. We have accepted jurisdiction in the case as one involving a construction of the revenue laws.

We shall refer to the appellant as Marsh and to the respondent as the Director or the Department. Marsh maintained a shop in Pleasant Hill, Missouri, in which he constructed wooden cabinets on special orders and installed them in homes, usually new homes under construction. It is indicated that these were generally installed in kitchens. He had no written contracts; upon request of a contractor (or occasionally an owner of a building acting for himself) he would go to the home, measure for the cabinets, obtain a selection of the type of wood and hinges and the desired design of the doors, and make a bid. If the bid was accepted he would construct the cabinets in his shop in several sections or pieces, and haul them to the house in question. All of these contracts included installation, and in all instances involved here the charges paid included installation. Very occasionally he sold a cabinet to a homeowner who installed it himself, but no such situations are involved here. He bought his lumber and other materials and paid sales taxes on those purchases.

Marsh installed all of the cabinets by placing them in the house and nailing them to the walls and floors. On the upper cabinets he used nails two and one-fourth inches long; on the lower cabinets he used sixteen penny nails, about three and one-half inches long, fixing the cabinets both to the walls and the floors. He also cut, fitted and installed, from measurements, formica

---

1. All statutory references will refer to that revision.

tops for the cabinets. When this was all completed, he sent the contractor a bill. When the bill was paid he signed a mechanics' lien waiver. Marsh testified that the bill was due "upon completion of the job." The cabinets made for each house varied from the others, in measurements always, and frequently in materials and design; generally, a cabinet made for one house would not fit any other house. He never tried to take a cabinet out because it was not paid for; it would have been of little or no value to him. If such cabinets were removed there would be "torn places" in the walls, and ragged holes in the floors, for an iron bar would have to be used; perhaps the cabinet would be "scarred," and if the plumbing and wiring had been installed these would have to be removed; "it is very hard to get them [the cabinets] off the wall." The cabinets were usually installed when the house was in a "roughed in" stage, so that the carpenters might then complete their "trim." On these jobs the material comprised about one-half of the cost and the labor the other half. Marsh had removed a "few" cabinets when the contractor was not satisfied, and reconstructed them. He lost $3,000 on one job because the contractor did not pay him and he did not want to file a mechanics' lien.

The basic controversy here is whether Marsh sold tangible personal property or whether, when the transfer occurred, the cabinets had become a part of the real estate. On this the parties naturally take opposing views. We must necessarily determine *when* title passed; neither party has been very precise, in brief or argument, on this point. Also involved is a consideration of the subject of "fixtures." The hearing officer found: "That at the time of installation the cabinets in question became affixed to the real estate of others"; and that the cabinets usually cannot be removed without some damage. He concluded (as a matter of law): that the "substance" of the transaction was the sale of tangible personal property, and that the installation was "incidental" to the sale; that the cabinets were "tangible personal property at the time of the sale" and subsequently were

affixed to the real estate. The circuit court held that the findings of the Department were supported by substantial evidence and adopted them, and it also affirmed its conclusions. In a memorandum opinion it stated that when the cabinets were delivered they were personal property and that they did not lose "their identity" by being "nailed to the wall." It recognized that the installation was the "final step" in the overall transaction but held that this was "incidental." The Court's statements in the opinion are largely conclusions of law.

As already stated the hearing officer found that the cabinets did "become affixed to the real estate." Neither he nor the court attempted to define just when title passed, or how it might have passed before the installation. Certainly Marsh's contract had not then been completed. Although respondent states that there was "evidence" to support a conclusion that the parties *agreed* to consider the cabinets as personal property after the installation, he points out no such evidence and we find none. We have recited the evidence rather fully. The hearing officer found nothing indicating any such agreement or any "intention" that the articles should remain as personal property.

A fixture is an article of personal property which has been so annexed to the real estate that it is regarded as a part of the land; its status may depend upon the facts and circumstances, but the principal elements for consideration are: (1) the annexation; (2) the "adaption" of the article to the location; and (3) the intent of the annexor at the time of the annexation. A fixture belongs to the owner of the land. *Bastas v. McCurdy,* 266 S.W.2d 49 (Mo.App. 1954), frequently cited in later cases. A particular emphasis is laid on the element of intent; this means, as we understand it,—did the annexor intend to make it a permanent accession to the land? And the intent is shown generally by one's acts and conduct and not by any secret intention. *Bastas,* supra. As expressing further enunciations of these principles, see: *Leawood National Bank of Kansas City v. The City*

*National Bank & Trust Co. of Kansas City,* 474 S.W.2d 641 (Mo.App.1971); *State ex rel. Highway Comm. v. Wally Hutter Oil Co.,* 467 S.W.2d 279 (Mo.App.1971); *Blackwell Printing Co. v. Blackwell-Wielandy Co.,* 440 S.W.2d 433 (Mo.1969). An article may constitute a fixture although the annexation be slight. *Glueck & Co. v. Powell,* 227 Mo. App. 1226, 61 S.W.2d 406 (1933). We observe here that all the facts and circumstances indicate that when Marsh nailed these cabinets firmly into the respective houses he intended that they should become a permanent part of the house. When this occurs, clearly the title to the property passes to the owner of the real estate, in the absence of some agreement to the contrary. Evidence of such agreements was shown in *State ex rel. Otis Elevator Co. v. Smith,* 357 Mo. 1055, 212 S.W.2d 580 (1948); and *American Clay Machinery Co. v. Sedalia Brick & Tile Co.,* 174 Mo.App. 485, 160 S.W. 902 (1913). As already stated, we find no evidence here of any agreement that the cabinets should remain personal property after installation. If respondent claims that the sale was completed before the cabinets were installed, we find that there is no evidence to support that contention and it flies in the very teeth of the contract between the parties. We hold that these cabinets became fixtures, that the title passed to the owner of the real estate when they were installed, and that they had become real estate, not subject to sales taxes, at the time the sales were completed. This situation has some analogy to the installation of the separate units in a modular home, one which is constructed by setting in place sundry pre-built units. Certainly, in that situation each unit becomes a part of the real estate when installed.

▉ The fact that a few cabinets had, over a period of years, been removed to make changes desired by the contractor, does not, in our view, alter the result. That situation was an exception, and apparently a thing which seldom occurred. It might be considered as done at the owner's request to fulfill what he regarded as an implied warranty, or through a supplemental agreement to repair, replace or satisfy some change of mind, *after* the original passage of title. We decide this case in the light of the procedure followed in the great majority of the cases, and of the intent of the annexor at the time of installation. It is not shown that any such exceptional cases are involved in the present assessment. And, it has been held that the owner of the land may sever a fixture, thus making it again personal property. 36A C.J.S. Fixtures § 21a, pp. 666–667, citing various cases, including *Luhmann v. Schaefer,* 142 S.W.2d 1088 (Mo.App.1940). And see also, *Denvir v. Crowe,* 321 Mo. 212, 9 S.W.2d 957 (1928). Thus, a severance would not in itself negate the prior passage of title, even in the exceptional cases.

We need not discuss in any great detail the cases cited pro and con. Appellant cites *City of St. Louis v. Smith,* 342 Mo. 317, 114 S.W.2d 1017 (1937) and *State ex rel. Otis Elevator Co. v. Smith,* 357 Mo. 1055, 212 S.W.2d 580 (1948). The St. Louis case is of no particular importance here; it merely held that a contractor who mixed various materials and used the resulting products in buildings, sewers, streets, etc., under lump sum contracts with the city for completed construction work, was liable for sales taxes as a consumer of the materials; in other words, he did not resell the materials as such to the city, but delivered a finished product on which there was no sales tax due from the city. The case has some analogy here, although the subject of fixtures was not specifically discussed; obviously, however, the title to the commingled materials passed as real estate. The case of *State ex rel. Otis Elevator Co. v. Smith,* 357 Mo. 1055, 212 S.W.2d 580 (1948) is of particular importance here. The Otis Company constructed and installed elevators on special orders from the contractors or owners, to fit specific buildings. There were written contracts, and these included a provision that the Otis Company should retain title (even after installation) until payment was made, and that the elevators could be removed without material injury to the freehold. The Court held that this provision prevented the immediate passage of title

upon installation, and that the elevators thus were personal property, subject to the sales tax at 70% of the contract price. The Court there said in part, 212 S.W.2d l. c. 582–583: "If the materials have the legal status of tangible personal property when the title passes, they are subject to sales tax. On the other hand, if by the act of attaching them to the real estate they are converted into realty and the title passes to the landowner they will not be subject to the tax because it does not go against real estate. But even though the materials be attached to the real estate and in that sense be 'used and consumed', yet if the parties by their contract have preserved the legal status of the materials as personalty under the rule stated in the authorities cited supra in marginal note 2, then they are subject to the tax, notwithstanding the Elevator Company retained a conditional title until the contract price had been paid in full." And at 212 S.W.2d l. c. 584: "We hold the Elevator Company is liable for sales tax on the materials furnished under its class 1 and class 2 contracts because of the title retention clause therein. Otherwise, it would not be liable, since the contracts would be pure real estate construction contracts, as in the *Smith* case, supra." The holding there was that upon the installation of personal property into real estate as a part of a general construction contract the article becomes a part of the real estate and not subject to tax, in the *absence* of any agreement retaining title in the annexor. Two other fact situations, i. e., reconstruction and minor repairs, were also considered there but are of no consequence here. Respondent seeks to distinguish that case by reason of certain minor factual differences; these, in our opinion, are not sufficient to alter the effect and the applicability of the case to our situation.

Respondent cites (in addition to three cases on the subject of fixtures, generally) *Spagat v. Mahin,* 50 Ill.2d 183, 277 N.E.2d 834 (1971) and *State ex rel. Dravo v. Spradling, Director of Dept. of Revenue,* 515 S.W.2d 512 (Mo.1974). In *Spagat* the transaction was the sale and installation of wall-to-wall carpeting. A tax was levied on the cost of the carpet, but not on the installation charge. The matter involved certain Illinois statutes which are dissimilar to our Sales and Use Tax Statutes, and the regulations under those statutes; taxes were specifically imposed upon certain specially made-to-order articles, such as drapes, curtains, floor coverings, etc.; the Court held that the statutes applied to wall-to-wall carpeting selected and installed to order. The Court also held, under those statutes, that the sale of the carpet was the substance of the transaction and that the service in laying it was incidental. We doubt that the case has any applicability here, since it involved solely the effect of the Illinois statutes. No question of fixtures was litigated or discussed; and a carpet is not usually affixed as, or intended to become, a permanent part of the house in which it is installed. Be that as it may, the case is not persuasive here.

In *State ex rel. Dravo Corporation v. Spradling,* 515 S.W.2d 512 (Mo.1974), the plaintiff had purchased and assembled prefabricated equipment and machinery for a new iron-ore pelletizing plant; it also installed the equipment, all under a contract with the owner. The contract provided that the plant owner should be responsible for any sales taxes. The sole question litigated was whether Dravo should have the benefit of § 144.030, subd. 3(4), which exempts from the sales and use taxes "Machinery and equipment purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants * * *," if *used* in creating a product to be sold for final use or consumption. Dravo paid a tax under protest; the Revenue Department, admitting that the owner would have been entitled to such an exemption, asserted that Dravo was not, because the person claiming the exemption must be the one who *uses* the property for the purposes designated in the statute. The Court held that Dravo was entitled to the exemption. Respondent says that the Court there indicated that Dravo was actually conveying personal property and that it would have been liable for the tax in the absence of the

statutory exemption. The only question actually decided there was the applicability of the exemption to Dravo. No one raised or litigated any question regarding fixtures, and indeed it was not necessary, in view of the exemption statutes; the question of when title passed was not raised or considered. There was a total absence in the *Dravo* case of the issues which are decisive here. The Court there said, as quoted by respondent, 515 S.W.2d l. c. 515: "Our case does not involve the construction of a building or any similar project; the goods here were not ordinary building materials but a complex and wholly different type of personal property, already fabricated and needing only to be assembled and installed intact as a permanent part of the final project." We see nothing in this which constitutes a holding, express or implied, that personal property which has been installed as a permanent part of a building before title passes, is subject to the sales tax. The Court was speaking to the exemption issue. The *Dravo* case is certainly not controlling here and essentially not applicable.

We do not believe that the issue of whether or not these cabinets were personal or real property when the sale was consummated depends upon whether they were constructed in a "remote facility" (i. e., the shop) or whether the installation was "incidental" to the construction. The installation was an integral part of the contract. Nor do we believe that the mere fact (as Marsh argues) that the cabinets were made on special order is in itself decisive. When cabinets were sold from the shop, on special order, to be installed by the purchaser, there was a sale of personal property and a tax was paid. We have discussed what we find to be the controlling principles.

■ The fact that the contractor always submitted and Marsh always signed a mechanics' lien waiver, after installation, is a circumstance strongly indicating that both parties considered that the cabinets had become a part of the real estate, and intended that they should do so. A mechanics' lien is upon real estate, not personal property, and the right to a lien compensates for the owner's loss of the title to his personal property by affixing it to the real estate.

The Director's principal contention apparently is that the cabinets continued to be personal property after installation. Under the facts in this record, and the rulings in *State ex rel. Otis,* supra, that could only be true if there was some agreement to that effect. No such agreement has been shown, express or implied. There is also a possible contention, arising from a conclusion of the hearing officer, that title was transferred before installation. There is no basis whatever in the record for this. The decision of the hearing officer was not supported by competent and substantial evidence and, on the whole record, it was not authorized by law. He made no findings which would justify a holding that the cabinets were transferred as personal property. We hold that the transfer was consummated when the cabinets were affixed to the real estate and that there was no transfer of tangible personal property as described in Sections 144.010 and 144.020.

The judgment of the circuit court is reversed, and it is directed to enter a judgment setting aside the decision of the Department of Revenue which held the tax assessment to be valid, and instructing that Department to abate the tax. It is so ordered.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Justices concur.