**In re AMERECO ENVIRONMENTAL SERVICES, INC., et al., Debtors.**

**BANNISTER BANK & TRUST, Plaintiff,**

v.

**CITY MANAGEMENT COMPANY, Defendant.**

**Bankruptcy No. 90–40502–2–11.
Adv. No. 91–4289–2–11.**

United States Bankruptcy Court,
W.D. Missouri.

April 6, 1992.

Timothy J. Sear, Kansas City, Mo., for City Management Co.

Dennis Dibler, Kansas City, Mo., for plaintiff.

Irvin C. Ness, Kansas City, Mo., for Hazardous Waste Recovery, Inc.

Charles L. House, Kansas City, Mo., for debtors.

Gerald S. Meyer, Kansas City, Mo., for Unsecured Creditors Comm.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The present action comes before the Court on plaintiff Bannister Bank's declaratory judgment petition. Plaintiff asks this Court for a declaration of its rights, title and interest in certain equipment located at a facility owned by defendant City Management Company. The equipment in question had previously been leased by debtor AmerEco Environmental Services,

Inc. for use at that site. The Court has granted leave to intervene to Hazardous Waste Recovery, Inc. because they have purchased the rights to the equipment from plaintiff. The Court will also make a formal finding as to its jurisdiction in response to defendant's Motion To Dismiss For Lack Of Jurisdiction.

The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334 (1988) as a matter arising under Title 11. Additionally, the Court finds that, of the property that is in dispute, only the ladders and catwalks are property of the Intervenor by way of its purchase of equipment from plaintiff.

## FACTS

The disputed equipment had been leased by debtor from U.S. Capital Corporation ("U.S. Capital") for use in debtor's operations. Lessor U.S. Capital sold its interest in the equipment lease to plaintiff Bannister Bank and executed an assignment of the lease. After debtor filed for bankruptcy protection, Bannister Bank's Motion to Lift Stay was granted so that the bank could retake possession of the equipment. Hazardous Waste Recovery, Inc. ("HWR") bought the leased equipment from Bannister Bank and has removed most of it from the premises. HWR has intervened in this action to protect its premises. HWR has intervened in this action to protect its interest in the equipment which remains at the facility and is the subject of this dispute. Defendant City Management Company ("CMC") is the current owner of the real property upon which the disputed equipment is located by virtue of its purchase of debtor's assets.

The dispute relates specifically to: (1) various starter switches used in conjunction with a "blender system"; (2) various ladders and catwalks used to gain access to several large storage tanks; and (3) a "filter plug" used in conjunction with the blender system.

There is no dispute that the blender system was covered by the equipment lease and is now owned by HWR. The starter switches are located in an electrical control box in a room containing other electrical service panels. Electrical wiring and conduit runs from the electrical panel to the blender system. The blender system itself has already been removed. Pictures entered into evidence show that the starter boxes are attached to a concrete block wall and the conduit running between the starter boxes and the blender system is also attached to the wall.

There is no dispute that the tanks to which the ladders and catwalks are attached were leased equipment which is now owned by HWR. The large liquid storage tanks have not yet been removed from the facility. Pictures show that the tanks sit upon concrete pads. The ladders and catwalks allow workers to gain access to the tanks. They are bolted to the concrete pads at the bottom and are welded to the tanks at the top.

As to the filter plug, it is clear that a filter plug is included in the list of equipment now owned by HWR and there is only one filter plug present at the facility. The problem is that the serial number of the filter plug which is present at the facility is different from the serial number which is on the equipment list.

## JURISDICTION

The threshold question presented is whether or not the court has jurisdiction to hear this dispute. Defendant has moved to dismiss this action and argues that this court lacks jurisdiction because the property in question is no longer part of the bankruptcy estate and, since debtor is not a party to the dispute, resolution of the dispute will have no effect on administration of debtor's estate.

The district courts have original jurisdiction of "all civil proceedings arising under title 11 or arising in or related to cases under title 11". 28 U.S.C. § 1334 (1988). The "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising on or related to a case under title 11 shall be referred to the bankruptcy judges for the district". 28 U.S.C. § 157 (1988). The District Court for the Western District

of Missouri has provided for an automatic reference of such bankruptcy cases to the bankruptcy judges as provided for in § 157. Therefore, this court has jurisdiction to hear any case that arises under Title 11 or arises in or is related to a case under Title 11.

Defendant's argument fails to take into account the fact that resolution of this matter turns, at least in part, on the interpretation of two of this Court's prior orders: (1) the order approving the sale of debtor's assets to defendant CMC; and (2) the order granting plaintiff bank's motion to lift stay and retake possession of the leased equipment. Resolution of the dispute requires reference back to prior orders of this Court rendered in core proceedings. Accordingly, this action is a core proceeding under 28 U.S.C. § 157(b)(2). That puts jurisdiction to hear the dispute squarely before the Bankruptcy Court.

## DISCUSSION

### Starter Switches

Plaintiff asks the Court to declare that the disputed starter switches are part and parcel of the blender system and, therefore, that plaintiff conveyed them to HWR as part of the equipment purchased by HWR. Defendant counters that the disputed switches are fixtures and are owned by defendant as owner of the real property where the switches are currently located.

The Court will decline plaintiff's invitation to limit its finding to whether or not the switches are part of the blender system because such finding would not necessarily imply that they cannot be fixtures to the real estate separate and apart from the remainder of the system.

The Court does not construe its order of November 2, 1990 as authorizing plaintiff to remove any property which had become a fixture upon the real property. On November 2, 1990, this Court entered an Order (HWR Exhibit 4) which lifted the auto-

matic stay and authorized plaintiff to remove the listed equipment from debtor's facility. The blender system is among the pieces of equipment listed in that order. However, that order did not authorize plaintiff to remove any item to which it did not have good title and whenever an item becomes a fixture upon real property, title to that property passes to the owner of the real property. *Marsh v. Spradling*, 537 S.W.2d 402, 405 (Mo.1976).

Accordingly, the Court will address defendant's claim that the disputed switches have become fixtures upon the real estate. Since defendant interposes the argument that the disputed pieces of equipment are fixtures, defendant must bear the burden of proving that claim.

A fixture is simply a piece of personal property that has become so affixed to real property that it loses its identity as separate property and becomes part of the freehold estate. *Marsh v. Spradling*, 537 S.W.2d at 404. Whether or not an item of personal property has become a fixture is determined by the facts and circumstances of each individual case. Courts look specifically at: (1) the physical attachment (annexation) of the chattel to the real property; (2) whether the chattel is specifically adapted to the real property; and, most importantly, (3) whether the party which installed the chattel on the real property intended, at the time of installation, that it become a permanent part of the property. *Marsh v. Spradling*, 537 S.W.2d at 404; *Sears, Roebuck and Co. v. Seven Palms Motor Inn, Inc.*, 530 S.W.2d 695 (Mo.1975) (en banc). Each of the above elements must be present, to some extent, to justify a finding that an item has become a fixture. *Seven Palms*, 530 S.W.2d at 697.

While this Court is unable to decipher any bright line rule adopted by Missouri courts to determine when an item is so permanently affixed so as to become a fixture,[1] it is at least clear that annexation

---

1. Given the freedom to adopt such a rule, Professor White's "screwdriver-crescent-wrench-one-hour rule" would commend itself to this Court. "Under such a rule anything affixed to

the realty would be regarded as a fixture unless one man with a screwdriver and a crescent wrench could loosen it from the floor or wall within one hour". 2 James J. White & Robert S.

of the switches in question is permanent enough to allow them to be regarded as fixtures. The starter boxes and conduits are bolted to the concrete block walls of the building. While their removal might not cause substantial damage to the real estate, Missouri courts do analyze the annexation element in terms of firmness of attachment. So long as the method of attachment is consistent with the notion that the chattel is to remain permanently in place on the real estate, Missouri courts will find that the annexation element has been satisfied. In *Crane Co. v. Epworth Hotel Construction and Real Estate Co.* the Missouri Court of Appeals found that a fire hose which could be removed by simply unscrewing it from a hydrant was a fixture. 121 Mo.App. 209, 98 S.W. 795 (1906). That court stated that:

> [s]uch annexation, though slight and easily displaced, will not prevent an article becoming a fixture which is adapted to the proper use of the building and which was placed therein by the owner with the intent of forming a part of the special object and design for which the building was constructed. *Id.* 98 S.W. at 797.

In *Sears, Roebuck and Co. v. Seven Palms Motor Inn, Inc.* the Missouri Supreme Court found that motel room window curtains were fixtures even though they were simply hung from curtain rods. 530 S.W.2d 695, 696–97 (Mo.1975) (en banc). According to that court, "annexation is the least important of the 3 elements". *Id.* at 697.

The proper inquiry in connection with the adaptability element is whether the item is "peculiarly adapted to the real property". *Hoffman Management Corp. v. S.L.C. of North America*, 800 S.W.2d 755, 760 (Mo. Ct.App.1990). Trial testimony, indicated that the switches and wiring running to the blender system was installed in explosion proof switch boxes and conduit because such an installation is necessary due to the activity conducted on the real property. The switches are not located near the blender system, but in a room where all of the electrical panels for the building are locat-

ed. The conduit is cut to size and shaped to fit the particular installation requirements of that particular building, not of the machinery. It is apparent that in all respects, installation of these switches and conduit was adapted to the requirements of this particular building and the activity to be carried on at that site.

■ The last element is intent that the chattel become a permanent accession to the real property. Intent is generally shown by acts and conduct rather than an inquiry into any secret intention of the party who annexed the chattel to the real property. *Marsh v. Spradling*, 537 S.W.2d 402, 404 (Mo.1976); *Bastas v. McCurdy*, 266 S.W.2d 49, 51 (Mo.Ct.App.1954). Pictures of the starter boxes show that the boxes were installed in the same manner as all of the other electrical panels in the building which are certainly permanent parts of the real property. They are located adjacent to the other electric service panels in the building rather than in the vicinity of the actual blending operation. All of the facts and circumstances leave this Court with the distinct impression that these switches, switch boxes and conduits were not a temporary installation intended to be removed whenever the leased equipment was removed, but that they were installed with the intent that they were an integral part of the real property.

The Court finds that the installation of the starter switches meets all of the fixture elements recognized by the Missouri courts. Accordingly, the switches are a part of the real property and are owned by defendant CMC.

*Ladders and Catwalks*

■ The question presented in the case of the ladders and catwalks which were welded to the large liquid storage tanks is, whether by the doctrine of accession, title to these items has passed to plaintiff. In explanation of the doctrine of accession it is often stated that "[i]t is the general rule of law, that if the materials of one person are united to the materials of another, by labor, forming a joint product, the owner of

Summers, *Uniform Commercial Code* 521 n. 7    (3d ed. 1988).

the principal materials will acquire the right of property in the whole, by right of accession". *Kemp–Booth Co. v. Calvin*, 84 F.2d 377, 381 (9th Cir.1936) (quoting *Pulcifer v. Page*, 32 Me. 404, 405 (1851)). But the mere joining of one part to another is not sufficient. The owner of the principal piece of property will not gain any right or title to an item which is readily removable without damage to either piece of property. *Aero Corp. v. Associated Aerial Survey Co.*, 184 F.Supp. 821, 824 (D.Md. 1960); *see also Goodrich Silvertown Stores v. Brashear*, 198 S.W.2d 357, 361 (Mo.Ct.App.1946).

■ Testimony adduced at a trial indicated that the ladders and catwalks were welded to the tanks and that the welds are in the nature of a permanent attachment which cannot be easily broken. It is necessary to use a metal cutting saw to separate the ladders and catwalks from the tanks. Therefore, by the operation of the doctrine of accession, the ladders and catwalks have become the property of HWR, who currently owns the tanks.

*Filter Plug*

■ The final piece of equipment in controversy is the filter plug. A filter plug is listed on the list of formerly leased equipment which HWR bought from plaintiff. The parties agree that if the filter plug found at defendant's facility is the same as the one listed on the equipment list, then it is the property of HWR. But the serial number of that filter plug is not the same as that shown on the equipment list. Since substituted equipment is subject to the lease, plaintiff and Intervenor surmise that the filter plug found on the premises is a substitution for the one listed on the equipment list, therefore, it was part of the property sold by plaintiff to Intervenor. However, they have failed in their burden of proof as to the filter plug. There was no evidence presented from which the Court could find that this plug is in fact a substituted piece of equipment. Plaintiff and Intervenor have, therefore, failed to prove ownership of the filter plug.

CONCLUSION

For the reasons stated above, defendant's Motion To Dismiss For Lack of Jurisdiction is DENIED. On the merits of the case, the Court finds that the switches, switch boxes conduit, and electrical wiring from which the blender system was detached and which are currently located on defendant's real property are fixtures of the real property and, therefore, title to those items is vested in defendant. Title to the ladders and catwalks which have been welded to the storage tanks in order to provide safe access to the tanks has become vested in HWR as an accession to the tanks owned by Intervenor. Lastly, the Court finds that the filter plug in controversy is not the property of plaintiff or Intervenor and shall not be removed by either of those parties.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.