**BUCHHOLZ MORTUARIES,
INC., Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. SC 84816.

Supreme Court of Missouri,
En Banc.

July 29, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Asst. Atty. Gen., for Appellant.

Paul J. Puricelli, St. Louis, for Respondent.

DUANE BENTON, Judge.

The Director of Revenue appeals the decision of the Administrative Hearing Commission granting a refund to Buchholz Mortuaries, Inc. This case involves construction of the revenue laws; this Court has exclusive appellate jurisdiction. *Mo. Const. art. V, sec. 3.* Affirmed in part, reversed in part, and remanded.

Buchholz directs funerals and sells products and services, including embalming, storage of bodies, and use of facilities. The company's duties are specified in a funeral services contract. Buchholz assumes responsibility and risk of loss for contracted funeral services and products, from the time of receiving the body, to burial. According to the contract, the total amount due from the customer is payable in full "at the date of service."

Almost all customers buy a casket from Buchholz, from an inventory of about 95 models, ranging from $400 to $9,000. At burial, a casket is either placed directly in the ground, or housed in an outer container. Some cemeteries require containers, ranging from $400 to $17,000. *See 16 CFR 453.3(c)(2).* For the periods at issue, Buchholz purchased caskets and containers from other vendors for resale. It provided the vendors with resale exemption certificates, and paid no sales or use taxes on its wholesale purchase of caskets and containers.

Buchholz collected sales tax from its customers on caskets and containers. Buchholz later claimed a refund, which the Director denied. The AHC ruled for Buchholz, ordering a refund of $101,565.17, after deducting sales tax on interments not intended to be permanent (.25 percent).

■ AHC interpretations of revenue laws are reviewed de novo, and upheld when authorized by law and supported by competent and substantial evidence upon the record as a whole. *Section 621.193 RSMo*[1]; *Hermann v. Director of Revenue,* 47 S.W.3d 362, 366 (Mo. banc 2001). This Court adopts the factual findings of the AHC. *Hermann,* 47 S.W.3d at 366. Questions of law are for this Court's independent judgment. *Id.*

## I.  Containers

■ Section 144.020 taxes sellers for the privilege of selling tangible personal property at retail, or rendering taxable service. A *sale at retail* is a transfer of the ownership of, or title to, "tangible personal property," for consideration. *Section 144.010.1(10); see also sections 144.020.1 and 144.021.* The threshold question is whether containers are ever tangible personal property.

■ Personal property may be so annexed to real estate that it is part of the land, a "fixture." *Marsh v. Spradling,* 537 S.W.2d 402, 404 (Mo.1976). This is shown by: (1) annexation to the land; (2) adaptation to the location; and (3) intent of the annexor at the time of annexation. *Id.*

Burial containers are annexed to the land. They weigh up to 3,000 pounds, are placed in the ground, and covered with dirt. Normally, a container company supplies special equipment and labor for installation.

Adaptation requires that the article be "adapted to the use to which the realty is devoted." *Sears, Roebuck & Co. v. Seven Palms Motor Inn,* 530 S.W.2d 695, 697 (Mo. banc 1975). A cemetery is a place to bury bodies. Clearly, a container is adapted to the purpose of cemeteries.

Both Buchholz and its customers intend that the container is a permanent fixture

1.  All statutory references are to RSMo 2000.

in 99¾ percent of all burials. After the services, the container is sealed.

The Director argues that because the customer controls the kind of container and its location—and pays up front for it—the container is personal property at the time the customer takes ownership or title. In fact, the customer does not buy the moveable components of the container, but only the container, in ground, at the time of burial. Containers are fixtures not subject to tax.

## II. Caskets

The AHC ruled that caskets are also not subject to sales tax. A *sale at retail* is a "transfer" of the ownership of, or title to, tangible personal property, for consideration. *Section 144.010.1(10)*. The taxable event is the passage of title or ownership. *Blevins Asphalt Const. Co. v. Director of Revenue*, 938 S.W.2d 899, 901 (Mo. banc 1997), citing *Kurtz Concrete, Inc. v. Spradling*, 560 S.W.2d 858, 860 (Mo. banc 1978). Title and ownership are usually, but not always, acquired simultaneously by the purchaser. *Olin Corp. v. Director of Revenue*, 945 S.W.2d 442, 444 (Mo. banc 1997); *Becker Electric Co. v. Director of Revenue*, 749 S.W.2d 403, 407–408 (Mo. banc 1988).

In the *Marsh* case, the seller built cabinets and installed them in kitchens. *Marsh*, 537 S.W.2d at 403. Payment occurred only after the cabinets were affixed to the walls. The cabinets could not be installed elsewhere or removed without damaging the house. *Id.* at 404. This Court held that the transfer was consummated when the cabinets were nailed to the walls, becoming fixtures, and that there was no transfer of personal property. *Id.* at 407.

In this case, the AHC reasoned that caskets are analogous to the cabinets in *Marsh*. The AHC decided that both title

and ownership passed to the customer when the casket was buried.

If either ownership or title passes to the customer before burial, the casket is personal property at that point, subject to tax. *See Section 144.010.1(10)*. There are two distinctions between this case and *Marsh*. First, Buchholz's customers pay "up front" for the casket, while it is still moveable. Second, after the casket is paid for, the customer has control over its movements. The correct analogy to *Marsh* is that the caskets here are like cabinets sold at the cabinetmaker's shop, and then moved at the buyer's instruction to the house for permanent installation. See *Marsh*, 537 S.W.2d at 407.

Buchholz emphasizes its physical possession of the casket until the burial, which must be under the "direction" of a licensed funeral establishment or director. *See 4 CSR 120–2.070(23)*. Physical possession, however, is not conclusive of ownership; the key is the intent of the parties, as evidenced by all relevant facts, including custom or usage of trade. *Ovid Bell Press v. Director of Revenue*, 45 S.W.3d 880, 885 (Mo. banc 2001), citing *Kurtz Concrete, Inc. v. Spradling*, 560 S.W.2d 858, 861 (Mo. banc 1978).

The record is undisputed that the customer may choose another licensed mortuary, and Buchholz obeys that choice. This acquiescence is statutory. Before obtaining possession of the body, a funeral director must have express authority from the person entitled to the custody or control of it. *Section 333.121.2(17)*. If the funeral director refuses to surrender the body upon request of that person, the director can be disciplined. *Section 333.121.2(21)*. The customer controls the body, and has paid for the surrounding casket, while it is still moveable. The transfer of the casket occurs when it is

tangible personal property, subject to sales tax.

Buchholz argues that the casket is not "delivered" to the customer until the time of burial. Buchholz stresses that it has the risk of loss for the casket until burial, showing its title and ownership of the casket until it is real property.

"The transfer of title and the responsibility for the loss do not necessarily occur at the same time." *House of Lloyd, Inc. v. Director of Revenue,* 824 S.W.2d 914, 922 (Mo.1992), *rev'd on other grounds by Sipco, Inc. v. Director of Revenue,* 875 S.W.2d 539 (Mo.1994). By custom and usage of trade, Buchholz retains the risk of loss even after the customer has acquired ownership and title by paying for the casket, and gaining control over its movements.

Because both ownership and title pass to the customer prior to burial, caskets are personal property, subject to sales tax.

### III.

The decision of the AHC is affirmed in part, reversed in part, and the case is remanded.

WHITE, C.J., STITH, PRICE, TEITELMAN and LIMBAUGH, JJ., concur.

WOLFF, J., concurs in separate opinion filed.

MICHAEL A. WOLFF, Judge, concurring.

I concur in the principal opinion.

I write separately to point out that the money to be refunded belongs to Buchholz's customers. If Buchholz keeps the money that the state is to refund, Buchholz will be unjustly enriched from refund of taxes that Buchholz itself did not actually pay.

Buchholz's customers paid the tax that Buchholz then sent to the state. A refund, minus the reasonable attorneys' fees incurred by Buchholz to obtain the refund, rightfully belongs to those who paid the tax. *See Shelter Mutual Insurance Co. v. Director of Revenue,* 107 S.W.3d 919, 926–28 (Mo. banc 2003) (Wolff, J., concurring in part and dissenting in part).

Casket containers are fixtures and, thus, are not subject to sales tax, the Court holds. Buchholz's customers purchased these containers, ranging in price from $400 to $17,000, and paid sales tax at the time of purchase. Buchholz merely collected the sales tax, which it remitted to the director. Buchholz will be unjustly enriched at the expense of its customers if allowed to pocket a refund of tax money that it did not pay.

Buchholz and other sellers who receive sales tax refunds are, and perhaps will be, subject to class suits on behalf of customers at whose expense the sellers have been enriched. This was precisely the situation in *Cohon v. Oscar L. Paris Co.,* 17 Ill. App.2d 21, 149 N.E.2d 472 (1958), where the court granted class relief to buyers of wall-to-wall carpeting after the seller received a refund of taxes the buyers paid when purchasing the goods. *See also Shelter Mutual Insurance Co. v. Director of Revenue,* 107 S.W.3d at 924–28 (Wolff, J., concurring in part and dissenting in part); *Cole v. Morris,* 409 S.W.2d 668 (Mo. 1966).

In this case, a class action is particularly appropriate because names of customers should be readily available because of the size and nature of the purchases. In cases where the buyers cannot be readily identified, a court can use the "fluid class recovery" doctrine or escheat the unclaimed

funds to the state.[1] In any event, the seller that collected the tax should not be entitled to keep the refund over and above its legal expenses incurred in seeking the refund.[2]

There are two options for the Administrative Hearing Commission to take, on remand, to avoid the unjust enrichment. The first option is for the commission to grant the refund in the form of a constructive trust, which the seller would maintain for the benefit of its customers. *See Cole v. Morris*, 409 S.W.2d 668, RESTATEMENT (FIRST) OF RESTITUTION sec. 160 (1937).

A second option would be to prevent any future overpayment of taxes but deny the refund unless the vendor first agrees to pass the refund along to its customers. *See Shelter Mutual Ins. Co., v. Director of Revenue*, 107 S.W.3d 919, 926–27 (Mo. banc 2003).[3]

However, in the absence of statutory authority for the commission so to act, the commission may not consider itself empowered to use the court-made remedy of the constructive trust.

The commission should, however, offer Buchholz the option of agreeing on the commission's record to giving the refund back to its customers, minus the legal expenses incurred in getting the refund. If Buchholz agrees to give the money back to its customers, it would not be subject to litigation brought by its customers. Although it would not keep the windfall it would have the benefit, derived from this litigation, of not having its future sales of casket liners subjected to sales tax. If the seller does not agree to pay the money back to its customers, it may be subject to a class suit.

If the mortuary agrees to pass along the tax money to those who paid it and is unable to identify those who should receive it, the money should, by Buchholz's agreement, be paid over to the state as unclaimed property. *See* sections 447.010 et seq., RSMo 2000, (known as the Uniform Disposition of Unclaimed Property Act), *State ex rel Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 495 (Mo. banc 2003).

Chapter 144 RSMo requires sellers to collect sales tax. It imposes a penalty for

1. The fluid class recovery doctrine is a rule of equity used in class actions, based on the *cy pres* doctrine. The fluid recovery doctrine is used for distribution of funds in a class action settlement or award that either cannot be feasibly distributed to individual class members or that remain unclaimed after individual distribution is completed. In the settlement context, the parties, subject to court approval, may agree that undistributed funds will be distributed for the indirect benefit of the class. When a settlement agreement is silent on distribution of surplus funds or the when the fund is a result of a judgment, the court that has jurisdiction over the recovery fund may make an appropriate order for their distribution. The unclaimed funds may also be distributed to the appropriate state or political subdivisions where the class members reside. 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS §§ 10:15, 11:20 (4th ed.2002).

2. In some instances, actions for tax refunds are solicited by "tax consultants" who scan the revenue laws for potential refunds and take a contingent fee from the resulting refund. To the extent that this activity involves the practice of law by nonlawyers, the fees so incurred should not be recognized as legitimate fees incurred in seeking the refunds.

3. Missouri law provides that only the "person legally obligated to remit the tax" to the state—meaning the seller and not the purchaser—can seek a refund. Section 144.190, RSMo 2000; *Galamet, Inc. v. Director of Revenue*, 915 S.W.2d 331, 336 (Mo. banc 1996). Although customers lack standing on their own to request a refund, they should not be precluded from bringing an action against the seller for restitution.

failure to do so. (Section 144.480, penalty for failure to pay tax, make return, keep records or supply information required by 144.010—144-510; section 144.490, penalty for false return or false statement in return relating to amount of sales or tax due under 144.010–144.510; section 144.500, amount of penalty for fraud or evasion; and section 144.510, violation of provisions of 144.010–144.510 is misdemeanor.) It also provides, in section 144.190, that a refund can be obtained by the seller required to remit the tax, but not directly by the buyers themselves. The result is a game that perversely provides sellers the incentive to overcollect taxes, with the prospect of unjust enrichment when seeking refunds. (If refunds are not sought, the state is unjustly enriched.)

In this game, the customers who have paid the tax are always the losers. In fairness the game should be played so that when the state gets beat, the tax-paying customers will win.