SURREY'S ON THE PLAZA, INC.,
Respondent/Cross–Appellant,

v.

DIRECTOR OF REVENUE,
Appellant/Cross–
Respondent.

Hooters of Springfield (Missouri),
LLC, Respondent,

v.

Director of Revenue, Appellant.

Nos. SC 85331, SC 85428.

Supreme Court of Missouri,
En Banc.

March 9, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant/Cross-Respondent.

Marc H. Ellinger, James B. Deutsch, Jefferson City, for Respondent/Cross-Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., James R. Layton, State Solicitor, Jefferson City, for appellant.

DUANE BENTON, Judge.

This opinion resolves two cases. In the first, the Director of Revenue assessed Surrey's on the Plaza, Inc., for its own sales, and those by the prior owner. In the other case, the Director assessed Hooters of Springfield (Missouri), LLC, only for successor liability. The Administrative Hearing Commission ruled against the Director in both cases. The Director appeals; Surrey's cross-appeals. *Mo. Const. art. V, sec. 3.* This Court reviews de novo the AHC's construction of state revenue laws. *Buchholz Mortuaries v. Director of Revenue,* 113 S.W.3d 192, 193 (Mo. banc 2003).

## I.

Surrey's operates horse-drawn carriages in the Country Club Plaza of Kansas City. By City ordinance, Surrey's has a permit to provide tours on fixed routes, approved at least ten days in advance by a City official. Charges do not include sales tax. Surrey's claims it is not a "place of amusement" subject to section 144.020.1(2).[1]

Section 144.020.1 taxes "sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state." Specifically taxed are "fees paid to, or in any place of amusement, entertainment or recreation...." *Section 144.020.1(2); see also section 144.010.1(10)(a).*

Surrey's asserts it has no *place* of amusement—as the rides follow several routes on public streets. It analogizes to *Moon Shadow, Inc. v. Director of Revenue,* 945 S.W.2d 436 (Mo. banc 1997). There, a company did not owe tax for renting inner tubes and transporting customers to a "put-in" point on a river. *Id.* at 437. No place of amusement existed, because the company did not control where customers used the tubes. "An eight-mile stretch of river—owned and controlled mostly by the federal govern-

---

1. All statutory references are to RSMo 2000.

ment—is not a locality used as a 'place of amusement' within the meaning of section 144.020, subd. 1(2)." *Id.* Like the river in *Moon Shadow,* Surrey's argues, it does not control the streets in the Plaza.

■ A business that controls the locality of amusement or entertainment is liable for sales tax. In *Moon Shadow,* the company did not control the location where patrons chose to be amused or entertained. Surrey's business, however, is like those in two other cases. Tax applies to helicopter tours, because the operator controls where the helicopter flies, where entertainment occurs. *Fostaire Harbor, Inc. v. Director of Revenue,* 679 S.W.2d 272, 273 (Mo. banc 1984). Entertaining boat rides are subject to tax, because the operator controls the location of amusement—the boat. *Lynn v. Director of Revenue,* 689 S.W.2d 45, 48 (Mo. banc 1985).

Surrey's controls the location of amusement and entertainment by directing the carriage through the Plaza. The carriage functions the same as the helicopter in *Fostaire* or the boat in *Lynn.* Patrons do not control the location of amusement or entertainment, as they did in *Moon Shadow.* The horse-drawn carriages are places of amusement under section 144.020.1(2).

Next, Surrey's contends that its rides are not taxable because they are education. Indeed, some evidence—from Surrey's former owner—suggests that the tours educate customers and promote local business.

■ A tour is still taxable even if it provides something else—education—in addition to amusement and entertainment. *Fostaire,* 679 S.W.2d at 273. Surrey's says the carriage rides are "memorable and romantic tours" for weddings, birthdays, parades, anniversaries, hay-rides, parties, family reunions, company retreats, scout troops, and funerals. It also offers

"theme" rides—Cinderella Carriage, Limousine Carriage, and Santa's Sleigh during winter holidays. These rides amuse and entertain. *See High Adventure Game Ranch, Inc. v. Director of Revenue,* 824 S.W.2d 905, 906 (Mo. banc 1992). In fact, Surrey's prior owner described the customers as "amused," and the rides as "entertaining."

To be taxable, "two elements are essential—that there be fees or charges and they be paid in or to a place of amusement." *L & R Distributing, Inc. v. Missouri Dep't of Revenue,* 529 S.W.2d 375, 378 (Mo. banc 1975). Surrey's collected fees for "amusing" and "entertaining" carriage rides in a place it controlled. The AHC erred in holding that the rides were not taxable.

## II.

■ Surrey's cross-appeals, objecting to liability as a successor. Section 144.150 imposes successor liability:

3. ... If the purchaser of a business or stock of goods shall fail to withhold the purchase money as provided in this section and remit at the time of purchase all amounts so withheld to the director to pay all unpaid taxes, interest, additions to tax and penalties due from the former owner or predecessor, the purchaser shall be personally liable for the payment of the taxes, interest, additions to tax and penalties accrued and unpaid on account of the operation of the business by the former owner and person.

*Section 144.150.*

Surrey's purchased the horse-drawn carriage business from Harbour–Wholesale, Inc. At the time of purchase, Harbour–Wholesale owed sales tax. Surrey's has not remitted the tax, for two reasons.

First, Surrey's contends that the Director did not meet her burden of proof

under section 144.150, to show that Surrey's failed to withhold money from the purchase price. *See Section 621.050.2(2).* This Court once held that failure-to-withhold was a condition of successor liability under section 144.150. *Harper v. Director of Revenue,* 872 S.W.2d 481, 482 (Mo. banc 1994). Immediately after *Harper,* however, the General Assembly amended section 144.150 with the italicized words:

> 3. ... If the purchaser of a business or stock of goods shall fail to withhold the purchase money as provided *in this section and remit at the time of purchase all amounts so withheld to the director to pay all unpaid taxes, interest, additions to tax and penalties due from the former owner or predecessor,* the purchaser shall be personally liable for the payment of the taxes, interest, additions to tax and penalties accrued and unpaid on account of the operation of the business by the former owner and person.

*S.B. 477, 478, 689, 608 & 532, 1994 Mo. Laws 486.*

Before this amendment, the purchaser's responsibility ended with withholding from the purchase money, in order to create a fund for the Director. *See Harper,* 872 S:W.2d at 482; *Gammaitoni v. Director of Revenue,* 786 S.W.2d 126, 129 (Mo. banc 1990). *Harper* thus required that the Director show a failure-to-withhold before finding successor liability. *Harper,* 872 S.W.2d at 482.

The legislature, however, amended the statute to require remittance upon purchase of a business (by the language italicized above). The 1994 amendment expands the purchaser's responsibility, beyond creating a fund. If the successor does not remit, the successor is liable—even if the successor withheld from the purchase money. The Director need only prove that the purchaser did not remit at the time of purchase.

■ Next, Surrey's claims that the sale is not subject to section 144.150, because "all or most" of Harbour–Wholesale's business was not transferred. Harbour–Wholesale operates various businesses—primarily commercial real estate—most of which were not sold to Surrey's. Only the horse-drawn-carriage business was transferred. Surrey's contends that "business" in section 144.150 refers to everything a seller owns.

Section 144.150.1 applies where a business owner sells "all or substantially all of his or their business or stock of goods." The term "business" is defined for sales tax as *"any activity* engaged in by any person ... with the object of gain, benefit, or advantage, ... and the classification of which business is of such character as to be subject to [sales tax]." *Section 144.010.1(2)* (emphasis added). An activity occurs at a location—"a place of business"—where a retail sales license shall be prominently displayed. *Section 144.083.1.* A person may carry out several different businesses at the same time, as indicated by: (1) a seller lists "all its business locations" on its application to the Department of Revenue, and (2) since sales tax rates vary among jurisdictions, the Department and local governments record the location of each business. *See Missouri Tax Registration Application, Form 2643, Section 18 (Nov. 2003); 12 CSR 10–42.090 (1999).* Each location is normally a distinct business for purposes of successor liability. *See Bates v. Director of Revenue,* 691 S.W.2d 273, 277 (Mo. banc 1985).

The carriage-ride business was one business in Harbour–Wholesale's corporation. Surrey's bought 20 horses and 27 carriages from Harbour–Wholesale, which kept two horses and one carriage. The sales agreement says Surrey's purchased "[a]ll

assets of sellers used in the business of Surrey's, Inc." This sale—while not for all of Harbour–Wholesale's assets—consisted of "substantially all" of Harbour–Wholesale's carriage-ride business in Kansas City. Successor liability is appropriate.

■ Surrey's, however, does not owe additions to tax. Additions should not be assessed if a taxpayer believes, in good faith, that no tax is due. *Conagra Poultry Co. v. Director of Revenue*, 862 S.W.2d 915, 919 (Mo. banc 1993). Here, Surrey's believed in good faith that it had no tax liability. It offered evidence—including an email from the Department—that the carriage rides were not subject to sales tax. Additions should not be assessed against Surrey's.

### III.

■ The Director seeks successor liability against the Hooters of Springfield restaurant. When taxes were incurred, Springfield Wings, Inc. and Hazzard–Burdick Group, Inc. owned the restaurant. Sales tax returns were filed for April through September 2001 under an identification number assigned to Springfield Wings. Except for a token payment in April, the restaurant did not remit any sales tax for these months.

Hooters purchased "all of the assets of the restaurant" in October 2001. Hooters then registered to pay sales tax to the Department. The registration, however, listed "Arrow Restaurants" as the seller, but used Springfield Wings' tax identification number. In February 2002, the Director assessed unpaid sales tax, additions, and interest against Hooters.

The AHC held that the Director failed to prove: 1) the assets sold were "all or substantially all" of the business of Springfield Wings; 2) Hooters failed to withhold the unpaid sales tax; and 3) a predecessor

had been required to remit sales tax. *See Section 621.050.2(2)*.

■ The AHC's first two holdings are erroneous, as discussed above in Surrey's case. Hooters purchased all or substantially all of the restaurant's business at the Springfield location. It is irrelevant that Hazzard–Burdick owned other restaurants. Similarly, the Director does not have to prove failure-to-withhold, after the amendment of section 144.150, so long as she proves no remittance occurred at the time of purchase.

The AHC also erred in concluding that the Director did not establish Springfield Wings as a "person required to remit a tax," under section 144.150.1. Contrary to that conclusion, the AHC specifically found that the prior owners of the restaurant were Springfield Wings and Hazzard–Burdick; and that sales tax returns were filed under the number assigned to Springfield Wings. Hooters' reference to the seller, on its tax registration, as "Arrow Restaurants" is unexplained. The evidence—including the bill of sale from Springfield Wings and Hazzard–Burdick as owners/sellers of the restaurant—indicates they were "person[s] required to remit a tax." The AHC erred, as no competent and substantial evidence supports its conclusion. *Section 621.193.* Hooters is liable as a successor to Springfield Wings and Hazzard–Burdick.

### IV.

The Director properly assessed sales tax on charges to Surrey's place of amusement. Both Surrey's and Hooters are successors. Additions against Surrey's based on successor liability are set aside. As to Surrey's, the AHC's decision is affirmed in part, and reversed in part. As to Hooters,

the AHC's decision is reversed. Both cases are remanded.

All concur.